

FILED

JUN 30 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No. 10-20007-E-7 |
| KATHY DIANE DITTIMUS, | ) |
| Debtor(s). | ) |
| _____ | ) |
| KATHY DIANE DITTIMUS, | ) Adv. Pro. No. 10-2174 |
| Plaintiff(s), | ) Docket Control No.: None |
| v. | ) Provided |
| ONEWEST BANK FSB, et al., | ) |
| Defendant(s). | ) |
| _____ | ) |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), IMB HoldCo LLC, IMB Management Holdings LP, OneWest Bank Group LLC, OneWest Ventures Holdings LLC, and OneWest Bank, FSB ("OneWest Bank, FSB") move for judgment on the pleadings on all Causes of Action in the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(c) as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure

7012(b).  Kathy Dittimus, the Plaintiff-Debtor, opposes the motion.

The court's decision is to grant the Motion, without prejudice and without leave to amend,  as to Mortgage Electronic Systems, Inc., IMB HoldCo, LLC, IMB Management Holdings LP, OneWest Bank Group LLC, OneWest Venture Holdings, LLC as to all Causes of Actions and claims.  The court grants the Motion, without prejudice and without leave to amend, as to the First Cause of Action to the extent that it requests injunctive relief or restitution, Fourth Cause of Action (R.E.S.P.A. Claims) and Fifth Cause of Action (Civil Conspiracy) and denies the Motion as to the First Cause of Action (Declaratory Relief) and the Second and Third Cause of Action (Violation of Automatic Stay and Damages) as against OneWest Bank, FSB.  Further amendments of the Complaint shall be as authorized by the court by further order, if any.

## STANDARD OF REVIEW

The standard of review under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) is the same as the standard under Fed. R. Civ. P. 12(b)(6).  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.* 313 F.3d 305, 308 n.8 (5th Cir. 2002); *Quest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002), *aff'd* 433 F.3d 1253 (9th Cir. 2006), *overruled in part on other grounds by Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 577 (9th Cir. 2008).   In addition, under the Supreme Court's most recent formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal, 129* S.Ct 1937, 1954 (2009). Instead, a complaint must set forth enough factual

matter to establish plausible grounds for the relief sought. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007). ("[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*, citing to 5 C. WRIGHT & A. MILLER, FED. PRACTICE AND PROCEDURE § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). However, all allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

A motion for judgment on the pleadings under Rule 12(c) is "essentially equivalent to a Rule 12(b)(6) motion to dismiss, so a district court may 'dispose of the motion by dismissal rather than judgment.'" *Technology Licensing Corp. v. Technicolor USA, Inc.*, 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F.Supp.2d 898, 902 03 (S.D.Cal.2004)). The moving parties have expressly requested that the court dismiss the adversary proceeding. Given the nature of the pleadings in this case and the requested relief, the court shall proceed to consider the request and rule on this in the same manner as a Rule 12(b) motion to dismiss.

Generally, the court may consider only the allegations made in the complaint and the answer; extrinsic evidence and factual contentions may not be taken into account. *Powe v. Chicago*, 664

F.2d 639, 642 (7th Cir. 1981).   If extrinsic matters are offered and not excluded by the court, then the motion for judgement on the pleadings is converted to a motion for summary judgement. Fed. R. Civ. P. 12(d);   *Hal Roach Studios, Inc.*, 896 F.2d at 1550.   The court shall not treat the present motion as a summary judgment, but limited it to what has been expressly requested by the Defendants, a motion to dismiss the complaint.

## EXTRINSIC EVIDENCE CONSIDERED

Both the Defendants and Plaintiff-Debtor offer extensive extrinsic evidence in support of their positions.   In both cases these facts were not included in the pleadings which the court must look to in deciding a Fed. R. Civ. P. 12(b) or (c) motion. Defendants' exhibits are offered under the guise of being judicially noticeable; they are not.   Only those facts which are generally known within the territorial jurisdiction of the court or capable of accurate and ready determination by resort the sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).   The exhibits offered by Defendants -- a deed of trust and notices issued pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§2601-2617 -- are not sources whose accuracy cannot reasonabley be questioned. *See*, *e.g.*, Fed. R. Evid. 802, 901.

Moreover, Plaintiff-Debtor's 417-page exhibit document lodged with chambers is not properly considered in this context. Plaintiff-Debtor uses the exhibit document to attempt to bolster the substance of general allegations made in the FAC or make new allegations.   This is not permitted.

///

4

**GROUNDS STATED IN MOTION FOR RELIEF REQUESTED**

In this case the various Defendants bring the present motion to dismiss the FAC as to all Defendants for failure to state a claim against any of the Defendants.  The grounds for relief on this Motion stated with particularity as required by Rule 7, Federal Rules of Civil Procedure, and Rule 7007, Federal Rules of Bankruptcy Procedure are:

1.   There are no charging allegations against any Defendants other than OneWest Bank, FSB.

2.   As to OneWest Bank, FSB are meritless and predicated on demonstrably inaccurate allegations that OneWest Bank, FSB -

       a.   Prepared and issued informational statements pursuant to the Real Estate Settlement Procedures Act,

       b.   (b) Which statements advised of an escrow account payment increase in the post-petition period,

       c.   Which the Plaintiff-Debtor wrongly characterizes as an impermissible effort to collect a debt in violation of the automatic stay.

3.   Plaintiff-Debtor's complaint does not allege any particular statement which was generated by OneWest Bank, FSB.

4.   Plaintiff-Debtor also advances a theory that the filing of the proof of claim by OneWest Bank, FSB violates the automatic stay.

Therefore, the Defendants conclude that the FAC should be dismissed as to all Defendants without leave to amend.

**ALLEGATIONS IN COMPLAINT AS TO NON-ONEWEST BANK, FSB DEFENDANTS**

The court's consideration of this Motion begins with the allegations actually made in the FAC as to the Defendants other

than OneWest Bank, FSB.  The FAC makes generic references to "Defendants" in making broad allegations of misconduct, which requires the court to consider the specific allegations of misconduct, which defendant is alleged to have engaged in the conduct, and then interpret what alleged misconduct relates to which subgroup of "Defendants" in the FAC.

The specific allegations in the Complaint include:

1.   Plaintiff-Debtor is the debtor in this Chapter 13 case and resides in real property which secures an obligation of the Plaintiff-Debtor on a promissory note.  FAC, ¶ 10.

2.   IndyMac Bank, FAB received an adjustable rate promissory note in the principal amount of $255,000 ("Note"), which provides for interest only payments until August 1, 2017.  The monthly payment on the Note is $1,859.38.  The Note provides that no change shall be made in the interest on the loan until July 2012.  FAC, ¶ 22.

3.   The Deed of Trust securing the Note ("Deed of Trust") does not provide for an escrow account or any change in the interest rate on the Note until 2012.  FAC ¶ 30.

4.   MERS was assigned the servicing responsibilities for the Note.  FAC, ¶¶ 11, 22.

5.   The FDIC was appointed as receiver for IndyMac Bank and its assets were passed through:

        a.   IMB HoldCo, LLC, FAC, ¶¶ 15, 22;

        b.   IMB Management Holdings, LLC, FAC ¶¶ 17, 22;

        c.   OneWest Venture, LLC, FAC, ¶¶ 18, 22;

        d.   OneWest Bank Group, LLC, FAC, ¶¶ 19, 22; and ultimately to

1        e.   OneWest Bank, FSB, FAC, ¶¶ 12, 22.

2        6.   A general allegation that unidentified "Defendant(s)"

3  were the agents for the FDIC during the period the assets were

4  passed to OneWest Bank, FSB.  FAC ¶ 25.

5        7.   A general allegation that unidentified "Defendant(s)"

6  were the agents for OneWest Bank, FSB.  FAC ¶ 26.

7        8.   Fidelity National Information Services, Inc. is a

8  defendant with default software and/or usage of NewTrak, and is in

9  privity with the actual holder of the secured claim in this

10  bankruptcy case.  FAC, ¶ 20.

11        9.   Plaintiff-Debtor's Chapter 13 Plan provides for payment

12  of the note as a Class 1 claim in this bankruptcy case.

13  FAC, ¶¶ 33, 36, 38.

14        10.  OneWest Bank, FSB filed a proof of claim on or about

15  February 26, 2010, based on the Note and Deed of Trust which

16  includes all past due mortgage payments, property tax or insurance

17  advances, and escrow balances.  FAC, ¶ 35.

18        11.  "Defendants" have not generated or provided an escrow

19  account disclosure statement showing a post-petition mortgage

20  increase.  FAC, ¶ 39.

21        12.  The Proof of Claim filed by OneWest Bank, FSB states that

22  the monthly payments due on the Note are $2,276.00.  FAC, ¶ 40.

23        13.  Unnamed "Defendants" objected to Plaintiff-Debtor's

24  motion to confirm a Chapter 13 plan.  FAC, ¶ 42.

25        14.  An unnamed "Defendant," conducted an "Escrow Analysis"

26  pursuant to RESPA upon notice of a bankruptcy filing.  FAC, ¶ 43.

27        15.  Unnamed "Defendants" do not distinguish between pre and

28  post-petition escrow advances when conducting a post-petition

escrow analysis.

16. An unnamed "Defendant" has generated no less than (8) eight post-petition mortgage changes in this case based on post-petition escrow analyses. FAC, ¶ 47.

17. Unnamed "Defendants" acts of issuing the post-petition mortgage changes were for the purpose of collecting pre-petition claims. FAC, ¶ 48.

18. Unidentified "Defendants'" acts of collecting pre-petition claims were accompanied by unidentified coercion, harassment, or pressure on the Plaintiff-Debtor to induce payment. FAC, ¶ 49.

19. Unidentified "Defendants" acted purposefully and systematically to utilize the Chapter 13 procedures and rules, the Chapter 13 Trustee, and local rules to put pressure on the Plaintiff-Debtor to pay the increased post-petition loan payments. FAC, ¶ 50.

20. Actions of unidentified "Defendants" were willfully and intentionally done to obtain payment on pre-petition claims through increased post-petition Note payments. FAC, ¶¶ 80, 81.

21. Unidentified "Defendants'" use of the post-petition notices of Note payment increases are intentional, with knowledge of the automatic stay, systematic, and to collect pre-petition amounts owed by Plaintiff-Debtor. FAC, ¶¶ 65, 66, 67, 68, 71.

22. Unidentified "Defendants" knew that when the Chapter 13 Trustee received the notices of post-petition increased Note payments, the Trustee would collect the increased amount from the Plaintiff-Debtor for the unidentified "Defendants." FAC, ¶ 99.

23. Unidentified "Defendants" increased the post-petition

8

Note payments with the knowledge that it was improper and would not be permitted by the court unless it was so provided in a confirmed Chapter 13 plan or pursuant to an order granting relief from the automatic stay.  FAC, ¶ 106.

24.  As a direct result of the post-petition notices of changes in the mortgage payments, the Chapter 13 Trustee collected the post-petition increased mortgage payments on the Note.  FAC, ¶ 51.

25.  Unidentified "Defendants'" post-petition escrow analysis includes "both post-petition advances of pre-petition escrow advances and fails to distinguish between escrow advances." FAC, ¶ 64.

26.  Unidentified "Defendants" have collected pre-petition escrow advances through the post-petition increase of the Note payment.  FAC, ¶ 65.

27.  Unidentified "Defendants" acts have resulted in Plaintiff-Debtor paying pre-petition taxes through the increased post-petition Note payments.  FAC, ¶ 74.

28.  Unidentified "Defendants" acts have resulted in Plaintiff-Debtor paying for improper forced place insurance through the increased post-petition Note payments.  FAC, ¶ 75.

29.  Unidentified "defendants" are alleged to have conspired to collect escrow advances through post-petition Note payment increases.  FAC, ¶ 52.

**CLAIMS ASSERTED AS TO THE NON-ONEWEST BANK, FSB DEFENDANTS**

In the First Amended Complaint the Plaintiff-Debtor makes broad sweeping allegations of conduct against unidentified "Defendants" or "Defendant."  All but OneWest Bank, FSB, are

alleged to have held an interest in the Note sometime in the past or provided loan servicing, but only OneWest Bank, FSB, is alleged to have asserted any rights or interest in the Note in this bankruptcy case. As discussed in this ruling, merely alleging that someone was involved in a conspiracy does not make them responsible for the conduct of the defendant alleged to have engaged in the improper conduct.

As to the first four causes of action, the only Defendant alleged to have engaged in the conduct at issue is OneWest Bank, FSB. From the allegations in the Complaint, all of the other parties interests alleged interests in the note and deed of trust predate the bankruptcy filing. For Fidelity National Information Services, Inc., the only allegation is that it provides software which OneWest Bank, FSB may have used in computing the post-petition mortgage payments. No plausible claims are stated against the non-OneWest Bank, FSB defendants. Rather, it appears that the Plaintiff-Debtor is attempting to wrap them into this action by alleging a civil conspiracy.

The Fifth Cause of Action, Civil Conspiracy, merely re-alleges the allegations in paragraphs 83 through 95 of the Complaint (RESPA alleged violations), which incorporates other allegations in the Complaint, and further asserts,

1.   Defendants have a common objective and course of action to improperly obtain payment of the pre-petition arrearage by incorrectly computing the post-petition installments due on the Note.

2.   Defendants intended by the notice of the post-petition installment increase to cause the Chapter 13 Trustee to collect the

incorrect amounts from the Plaintiff-Debtor and pay those amounts to OneWest Bank, FSB.

3.   OneWest Bank, FSB filed an objection to confirmation asserting the incorrect post-petition installment amount as part of its efforts to collect the incorrect amount.

4.   The Defendants collectively concealed the practice of incorrectly computing post-petition installments and that OneWest Bank, FSB was improperly collecting the pre-petition arrearage as part of the post-petition installments, as well as collecting the pre-petition arrearage under the terms of the Chapter 13 Plan.

To establish a civil conspiracy in California one must show that defendants jointly engaged in a tort.  There is no separate civil action for conspiracy to commit a tort without there being an actual wrongful act committed.  *Favila v. Katten Muchin Rosenman, LLP*, 188 Cal.App.4th 189, 206 (2010), and 5 WITKIN SUMMARY OF CALIFORNIA LAW TORTS, § 45.  The effect of the "conspiracy" is that each of the defendants involved is individually liable.   Though incorporating the general allegation paragraphs and the RESPA cause of action allegations, the general allegations of a conspiracy are generally made as to unidentified Defendants.

The California District Court of Appeal in *Black v. Bank of America*, 30 Cal. App. 4th 1 (1994) conducted the review of a conspiracy claim and the proper basis for such a claim when the parties involved were a corporation and the agents or employees of the corporation.  The court concluded that it is well established California law that employees or agents of a corporation cannot conspire with their principal or employer when acting in their official capacity.  In *Gruenberg v. Aetna Ins. Co*, 9 Cal.3d 566

(1973), the California Supreme Court concluded that an insured could not state a conspiracy claim against his insurance company and a separate insurance adjusting firm, a separate law firm, and employees of the two separate firms because only the insurance company had a duty of good faith and fair dealing with the insured. The two separate firms were not a party to the insurance contract and did not have such a duty to the plaintiff.  In its *Doctors' Co. v. Superior Court*, 49 Cal3d 39 (1989), decision the California Supreme Court held that an attorney and an expert witness employed by an insurance company could not be held liable for conspiring to violate the company's statutory duties, again because the statutory duties were owed only by the insurance companies.

In *Younan v. Equifax Inc.*, 111 Cal.App. 3d 39 (1980), the court rejected a conspiracy claim for constructive fraud alleged to be based on a breach of fiduciary duty owed by a disability insurer.   The insurer's agents did not owe the plaintiff a fiduciary duty, and only the insurer itself owed the fiduciary duty.  However, the court allowed stand a claim for conspiracy to commit actual fraud, since even the agents owed a duty to the plaintiff to "abstain from injuring the plaintiff through express misrepresentations, independent of the insurer's implied covenant of good faith and fair dealing."

This issue is further addressed by the Supreme Court in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*, 7 Cal. 4th 503 (1994). The Supreme Court first distinguished between alleged conspiracies arising out of tort claims and contract claims.  For contract claims, there is no tort obligation for one contracting party not to interfere with the performance of the contract.  There

1 is merely a contractual obligation to perform as promised.
2 Therefore, a party to a contract cannot be bootstrapped into a
3 conspiracy tort.

4      For there to be a civil conspiracy there must be "the
5 formation and operation of the conspiracy and damage resulting to
6 plaintiff from an act or acts done in furtherance of the common
7 design . . . In such an action the major significance of the
8 conspiracy lies in the fact that it renders each participant in the
9 wrongful act responsible as a joint tortfeasor for all damages
10 ensuing from the wrong, irrespective of whether or not he was a
11 direct actor and regardless of the degree of his activity."   Id,
12 p. 512.

13      In this case, all of the operative allegations have been made
14 against OneWest Bank, FSB for the remaining claims in this case for
15 which the nonspecific conspiracy is alleged: (1) Declaratory Relief
16 to determine the correct amount of the post-petition mortgage
17 payments and (2) alleged violation of the automatic stay by OneWest
18 Bank, FSB in increasing the post-petition mortgage payment and its
19 actions to obtain payment of that increased amount.   The Plaintiff-
20 Debtor only makes boilerplate allegations that unnamed Defendants
21 "conspired" for the "recouping of pre-petition claims from post-
22 petition estate property resulting in systematic injury to debtors
23 such as Dittimus."   FAC ¶ 97.   Further, there is no allegation as
24 to what duties, if any, that these unnamed Defendants owe to the
25 Plaintiff-Debtor and the damages to this Plaintiff-Debtor caused by
26 the breach of those duties.

27      The court grants the motion  to dismiss the Complaint in *toto*
28 as to Mortgage Electronic Registration Systems, Inc., IMB HoldCo,

1  LLC, IMB Management Holdings, LLC, OneWest Venture, LLC, FAC, and

2  OneWest Bank Group, LLC without prejudice.    The court does not

3  grant leave to amend at this time, in part because this is the

4  first amended complaint which has been fashioned after considerable

5  effort by the Plaintiff-Debtor and the lack of any allegations that

6  any of these Defendants have been involved in any way in this

7  bankruptcy case or conduct of OneWest Bank, FSB.  If the Plaintiff-

8  Debtor believes that she subsequently identifies facts sufficient

9  to allege claims against the other Defendants, she may seek leave

10  to amend from the court.

11        It has not been alleged that OneWest Bank, FSB and others

12  breached their duties to the Plaintiff-Debtor by conspiring with

13  others.  OneWest Bank, FSB cannot conspire with itself to violate

14  an obligation it owes to the Plaintiff-Debtor.  The court dismisses

15  the Fifth Cause of Action for conspiracy as to OneWest Bank, FSB

16  without prejudice and without leave to amend.

17                **FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

18        The court may only grant declaratory relief where there is an

19  actual controversy within its jurisdiction. *Am. States Ins. Co. v.*

20  *Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).  The controversy must be

21  definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S.

22  227, 240-41 (1937).  OneWest Bank, FSB argues that Plaintiff-Debtor

23  has failed to set out any facts demonstrating that a RESPA Notice

24  was generate to collect pre-petition claims.  However, in reading

25  the complaint in the light most favorable to the Plaintiff-Debtor,

26  the Complaint does state that OneWest Bank, FSB conducted an escrow

27  analysis, that the escrow analysis caused pre-petition escrow

28  shortfalls to be included in post-petition payments, and that

14

Plaintiff-Debtor and Chapter 13 Trustee were notified of this improper increased amount so that such amount would be paid post-petition to OneWest Bank, FSB.  Further, it is alleged that OneWest Bank, FSB has received the improper post-petition payments.

The Plaintiff-Debtor asserts that the correct post-petition monthly payment on the Note is  $1,859.38,[1]  while OneWest Bank, FSB, contends that the correct post-petition amount is $2,203.24. *See* OneWest Bank, FSB, objection to confirmation, p. 2:16-18. Docket Entry No. 29.    OneWest Bank, FSB directs the court to review the Escrow Account Disclosure Statement which it filed as Exhibit 1 in objection to confirmation.  Docket Entry No. 30.  The Escrow Statement is dated April 15, 2010, after the January 2010 commencement of this case, and states that beginning on February 1, 2010, the Plaintiff-Debtor's mortgage payment is $2,330.69.   In smaller, non-bold font, the Statement further advises the Plaintiff-Debtor that her payment may be $2,203.24 if she pays her shortage in a lump sum.

The Escrow Account Disclosure Statement tells the Plaintiff-Debtor that her payment is $2,330.69 is based on an escrow shortage of $1,520.34.  The objection to confirmation filed by OneWest Bank, FSB in this case clearly states that the current payment which the Plaintiff-Debtor must make to OneWest Bank, FSB is $2,203.24 if the Plaintiff-Debtor is to confirm a plan or not have the case dismissed.

---

[1]   The Plaintiff-Debtor's Chapter 13 Plan provided for monthly payments of $2,097.00.  Whether the dispute is between $1,859.38 or the $2,097.00, there is a dispute between what the Plaintiff-Debtor states the amount to be and the $2,330.69 demanded by OneWest Bank, FSB.

From a fair reading of the Complaint it is clear that Plaintiff-Debtor alleges that a dispute exists between OneWest Bank, FSB and Plaintiff-Debtor concerning the correct amount of the post-petition installments which are properly due on the secured claim. The request for declaratory relief is not duplicative of other causes of action. Only after the court determines the correct amount of the post-petition payments will the Plaintiff-Debtor, OneWest Bank, FSB, and the Chapter 13 Trustee know the correct amount to be paid monthly. Determination of this amount is independent of any determination as to whether OneWest Bank, FSB's conduct violated the automatic stay. Merely because the parties disagree as to the correct computation of a post-petition payment does not automatically create an actionable violation of the automatic stay.

The Motion is denied as to the claim for Declaratory Relief against OneWest Bank, FSB.

## SECOND AND THIRD CAUSES OF ACTION
## FOR VIOLATION OF AUTOMATIC STAY

The Plaintiff-Debtor asserts that the conduct of OneWest Bank, FSB in increasing the post-petition payments violated the automatic stay by recovering payment of pre-petition arrearage outside of a Chapter 13 plan. The Plaintiff-Debtor alleges that OneWest Bank, FSB has asserted the claim in this case and sought to obtain payment on the obligation evidenced by the Note. The Plaintiff-Debtor does not allege that any of the other persons named as Defendants filed a claim or attempted to obtain payment on the Note. Based on the pleadings in the First Amended Complaint, it alleges that,

1.    OneWest Bank, FSB generated no less than (8) eight post-petition mortgage changes in this case based on post-petition escrow analyses.  FAC, ¶ 47.

2.    OneWest Bank, FSB the issued the post-petition mortgage changes for the purpose of collecting pre-petition claims. FAC, ¶ 48.

3.    OneWest Bank, FSB purposefully and systematically utilized the Chapter 13 procedures and rules, the Chapter 13 Trustee, and local rules to put pressure on the Plaintiff-Debtor to pay the increased post-petition loan payments.  FAC, ¶ 50.

4.    OneWest Bank, FSB willfully and intentionally sought to obtain payment on pre-petition claims through increased post-petition Note payments.  FAC, ¶¶ 80, 81.

5.    OneWest Bank, FSB's use of post-petition notices of Note payment increases was intentional, with knowledge of the automatic stay, systematic, and to collect pre-petition amounts owed by Plaintiff-Debtor.  FAC, ¶¶ 65, 66, 67, 68.

6.    OneWest Bank, FSB knew that when the Chapter 13 Trustee received the notices of post-petition increased Note payments, the Trustee would collect the increased amount from the Plaintiff-Debtor for the unidentified "Defendants."  FAC, ¶ 99.

7.    OneWest Bank, FSB increased the post-petition Note payments with the knowledge that it was improper and would not be permitted by the court unless it was so provided in a confirmed Chapter 13 plan or pursuant to an order granting relief from the automatic stay.  FAC, ¶ 106.

OneWest Bank, FSB argues that Plaintiff-Debtor fails to alleged sufficient facts to establish a controversy, Plaintiff-

Debtor failed to plead the existence of a post-petition RESPA Notice, that a RESPA Notice could not violate the automatic stay as a matter of law, the request for declaratory relief is impermissibly duplicative, and Plaintiff-Debtor fails to allege sufficient facts to establish a controversy with regarding a proof of claim.

OneWest Bank, FSB, places great reliance on the Bankruptcy Appellate Panel decision in *Zotow v. Johnson*, et. al., 432 B.R. 252 (9th Cir. BAP 2010). In seeking to dismiss this cause of action, OneWest Bank, FSB asserts that a RESPA Escrow Account Disclosure Statement, as a matter of law, is merely informational and not an attempt to collect a debt. In *Zotow*, BAC Home Loan Servicing, LP ("BAC") sent one post-petition notice to the debtors showing an increase in the post-petition monthly mortgage payment. It was further alleged that BAC received several payments from the Chapter 13 trustee at the increased amount. The Bankruptcy Appellate Panel was reviewing the decision of the bankruptcy court after an evidentiary hearing on an objection to claim, not on a motion to dismiss.

The *Zotow* court first considered the decision of the Fifth Circuit Court of Appeals in *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008). In *Campbell*, the Fifth Circuit Court of Appeals concluded that the automatic stay precluded Countrywide Home Loans, Inc. ("Countrywide") from attempting to obtain payment on the pre-petition arrearage other than as permitted by the Bankruptcy Code. The obligation owing for a pre-petition arrearage, even if the claim is subject to the anti-modification provision of 11 U.S.C. § 1325(b)(2), is a pre-petition

1   claim subject to the automatic stay provisions of 11 U.S.C.
2   § 362(a). *Id.* at 354. However, the only conduct by Countrywide in
3   *Campbell* was filing a proof of claim stating the higher installment
4   amount. Filing a proof of claim, even one which grossly overstates
5   the claim, was not held to be a violation of the automatic stay.
6   *Id.* at 356.

7       The Third Circuit Court of Appeals has also addressed this
8   issue, again with Countrywide increasing the post-petition
9   installments to recover a pre-petition arrearage. After the
10  bankruptcy case was filed, Countrywide issued a revised escrow
11  analysis and demand for payment to the debtors. The Third Circuit
12  Court of Appeals concluded that the pre-petition arrearage was part
13  of the pre-petition claim which was governed by the Bankruptcy
14  Code. Countrywide was entitled to be paid the pre-petition
15  arrearage portion of its claim, but Countrywide could not violate
16  the automatic stay to obtain payment of the pre-petition arrearage.
17  The Third Circuit concluded that an attempt to obtain payment of a
18  pre-petition arrearage outside the plan payment could be a
19  violation of the stay. The matter was remanded to the trial court
20  to determine if the violation was willful to support an award of
21  damages pursuant to 11 U.S.C. § 362(k). *In re Rodriguez*, 629 F.3d.
22  136, 143-144 (3rd Cir. 2010). This decision was issued after the
23  Bankruptcy Appellate Panel ruling in *Zotow*.

24      The Panel in *Zotow* considered the scope of the automatic stay
25  with respect to communications relating to pre-petition claims.
26  Not every communication is prohibited. Rather, prohibited
27  communications are those which, based on direct or circumstantial
28  evidence, are geared toward collection of pre-petition debt, and

which are accompanied by coercion or harassment. *Zotow*, 432 B.R. at 259. Relying on *Morgan Guar. Trust Co. Of N.Y. v. Am. Sav. And Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986), the Panel concluded that a mere request for payment and informational statement are permissible communications which do not violate the automatic stay. *Id.* The Bankruptcy Appellate Panel also recognizes that, "Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable." *Id.* at 258.

In *Morgan Guar. Trust Co.*, the Ninth Circuit addressed the issue of whether the presentment of a note issued by Johns Manville violated the automatic stay.[2] Because the automatic stay seeks to ensure the orderly administration of the debtor's estate, provide a breathing spell for the debtor, maintain the status quo, and prevent harassment of a debtor by sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. *Morgan*, 804 F.2d at 1491. Examples of communications cited by the Ninth Circuit as violating the automatic stay included: (1) notice of intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to

---

[2]/ This predated the amendment to 11 U.S.C. § 362(b)(10) which exempts presentment of a negotiable instrument from the automatic stay.

collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor.    *Id*. Examples of communications not violating the automatic stay included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim).    *Id*.

The *Zotow* court concluded that the stay had not been violated on the facts of that case because Countrywide sent a single notice which did not request payment.    The one notice communicated the information obtained in the recent escrow analysis computed by Countrywide.    The record established at the evidentiary hearing revealed no indication that Countrywide attempted to collect the pre-petition arrearage outside the bankruptcy court.    The Panel placed significant weight on there being only a single notice sent to the debtor.    Given that there was one notice, no other action taken to obtain payment, and undisputed facts which did not constitute harassment or coercion, the Panel concluded that the single notice did not violate the automatic stay.

Applying both the spirit and letter of *Morgan Guar. Trust Co.*, creditors and debtors are allowed to communicate their disparate positions and rights they seek to assert.    It is when coercion or harassment is coupled with the communication that they can be a violation of the automatic stay.

The present adversary proceeding is significantly different than *Zotow*.    A review of the FAC reveals the following allegations are that:

1.   OneWest Bank, FSB conducted an improper post-petition escrow analysis to assert an improper post-petition installment amount due;

2.   OneWest Bank, FSB repeatedly and intentionally collected the improper post-petition installments.

3.   OneWest Bank, FSB's improper post-petition escrow analyses were part of the post-petition improper collection activities of OneWest Bank, FSB.

4.   OneWest Bank, FSB notified the Chapter 13 Trustee of the improper post-petition installment amounts as part of its intentional conduct.

5.   OneWest Bank, FSB routinely fails to distinguish between pre- and post-petition bankruptcy claims when conducting post-petition escrow analyses.  FAC ¶¶ 3, 64.

6.   OneWest Bank, FSB's failure to distinguish between pre- and post-petition bankruptcy claims is done with the knowledge that it will result in the collection of higher post-petition mortgage payments.  FAC ¶¶ 3, 44.

7.   The Proof of Claim filed by OneWest Bank, FSB all past due mortgage payments, property taxes and insurance actually advanced, and escrow advances.  FAC ¶ 41.

8.   OneWest Bank, FSB generated no less than eight (8) notices of post-petition changes in mortgage payments since the commencement of the case.  FAC ¶ 47.

9.   OneWest Bank, FSB's purpose in generating the eight (8) notices of post-petition changes in mortgage payments was geared to collect pre-petition claims.  FAC ¶ 48.

10.  OneWest Bank, FSB purposely and systematically utilized

the Chapter 13 procedure and rules, Chapter 13 Trustee, and local rules to pressure the Plaintiff-Debtor to pay the increased post-petition installments, FAC ¶ 50, which included pre-petition claims, FAC ¶¶ 48, 65, 66, 68.

11. Through OneWest Bank, FSB providing the eight (8) notices of post-petition payment increases, motions to dismiss the case (for failure to pay the full post-petition increased mortgage payment), and objections to confirmation (for failure to pay the full post-petition increased mortgage payment), OneWest Bank, FSB received at least four (4) payments of pre-petition claims through the increased post-petition payments.   FAC ¶ 51.

12. OneWest Bank, FSB's failure to distinguish between pre- and post-petition bankruptcy claims is done with the knowledge that it will result in the collection of higher post-petition mortgage payments is part of an intentional, systematic, practice to improperly obtain payment on pre-petition claims.   FAC ¶¶ 51, 71.

13. OneWest Bank, FSB's repetitive conduct in including pre-petition claim amounts in post-petition mortgage payments resulted in OneWest Bank, FSB receiving significantly more that what it was entitled to receive in distributions under the Bankruptcy Code. ¶ 73.

14. OneWest Bank, FSB knew that each time it sent the eight (8) notices of a post-petition increase in mortgage payment the result would be that the Chapter 13 Trustee would collect that amount for payment to OneWest Bank, FSB.   ¶ 99.

15. OneWest Bank, FSB knew that the Chapter 13 Trustee would collect the increased post-petition payment from the Plaintiff-Debtor by objecting to confirmation of the Plaintiff-Debtor's plan

on feasibility if it did not provide for payment of the amount computed by OneWest Bank, FSB.  ¶ 99.

16.  OneWest Bank, FSB filed objections to confirmation asserting the right to the increased post-petition payments as part of its systematic efforts to obtain payment of pre-petition claims through increased post-petition mortgage payments.  ¶¶ 100, 101.

17.  OneWest Bank, FSB acted with the knowledge that it was not permitted to obtain payment of pre-petition claims through an increase in post-petition mortgage payments absent a specific provision in a Chapter 13 plan or express order of the court. ¶ 106.

With respect to OneWest Bank, FSB, the only named Defendant who has participated in this bankruptcy case and to whom the above conduct is identified in the FAC, the Plaintiff-Debtor alleges a pattern of conduct in which OneWest Bank, FSB attempts to obtain payment on a pre-petition claim outside the strictures of the Bankruptcy Code.  As in *Rodriguez* and *Campbell*, the allegation is that OneWest Bank, FSB has used the process of sending notices that its post-petition mortgage payments are in an increased amount with the intention and knowledge that the increased amount is to recover pre-petition claims which should properly be paid through a Chapter 13 plan.  This is not a situation, as in *Zotow* where one notice was sent informing the trustee and debtor of the computed post-petition mortgage payment.  Rather, it has been specifically alleged that OneWest Bank, FSB knowingly and intentionally did so on multiple occasions to induce the Chapter 13 Trustee to collect for OneWest Bank, FSB the pre-petition claim as part of a post-petition mortgage payment.

Recently the Ninth Circuit Court of Appeals addressed whether conduct in a judicial proceeding immunized a creditor from contentions that the conduct violated federal law. In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011), the Ninth Circuit addressed a claim under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a et. seq. ("FDCPA"). In that case the conduct of the creditor at issue related to discovery which had been promulgated in a state court action. The FDCPA prohibits a debt collector from engaging in false, deceptive or misleading means in the collection of a debt. The creditor requested the admission of alleged facts which the creditor knew to be false. Additionally, the creditor failed to include in the request for admissions the required state notice that failure to respond would be a deemed admission. The Court found that requests for admissions in the state court action were a violation of federal law protecting the consumer debtor. Admission, was a false, deceptive, misleading means in collecting a debt. The court rejected the collector's contention that such misconduct would be solely governed by the local court rules and state law corrective remedies. The court is to apply the clear statutory language as enacted by Congress, and not rewrite the statute for policy reasons. *Id.*, p. 951.

The same, plain language rationale applies to the Bankruptcy Code and RESPA. OneWest Bank, FSB's argument that RESPA creates a free floating exemption from the automatic stay for however it computes and seeks payment of post-petition mortgage installments is as unpersuasive with this court as that argument has been with the courts in *Rodriguez* and *Campbell*. While the Bankruptcy Code

does not prohibit adjustments for post-petition changes authorized by RESPA, the automatic stay provisions of 11 U.S.C. §362(a) prohibit the collection of pre-petition debts outside of the bankruptcy.    Had Congress intended to exempt only demands for payment cloaked in RESPA from the automatic stay it would have said so in a clear and unambiguous manner.    Congress clearly knows how to make an exception to the automatic stay, *see* 11 U.S.C. §362(b), and the court will not imply that Congress gave Central Mortgage Company and other servicers or note owners free reign to do whatever they sought to obtain payment on pre-petition claims without regard to the Bankruptcy Code.

As compared to the creditor in *Morgan* who made one, innocent (without knowledge of the bankruptcy filing by Johns Manville) communication, it is alleged that OneWest Bank, FSB has engaged in multiple acts, with full knowledge of the bankruptcy case, which are specifically intended to collect pre-petition claims through post-petition mortgage payments which are not otherwise authorized by the Bankruptcy Code.    It is further specifically alleged that these multiple acts are done with the further knowing and intentional coercive conduct of OneWest Bank, FSB having the Chapter 13 Trustee require the payment of the improperly computed amounts under the threat of dismissing the Plaintiff-Debtor's bankruptcy case.    Additionally, it is alleged that OneWest Bank, FSB affirmative asserting that it is entitled to the improperly computed post-petition mortgage payments in objecting to the Plaintiff-Debtor's Chapter 13 plan.    Further, it is alleged that OneWest Bank, FSB has not only received multiple improperly computed post-petition mortgage payments, but that such payments

improperly divert distributions of monies under the bankruptcy plan, thereby hindering the proper administration of this case.

In connection with a motion to dismiss, the court does not determine the merits of the allegations, but only whether a plausible claim is asserted. Whether the Plaintiff-Debtor can actually prove facts to support the allegations is left to the trial or other dispositive proceeding. But would be improper of the court to prejudge the provability of the merits of these allegations on a motion to dismiss.

The motion to dismiss the Second and Third Causes of Action[3] for violation of the automatic stay against OneWest Bank, FSB is denied.

## FOURTH CAUSE OF ACTION
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

Plaintiff-Debtor alleges that the Note is subject to loan servicing provisions of RESPA. It is further alleged that under RESPA the Defendants were required to provide Plaintiff-Debtor with written notice of each sale or transfer of the assignment, sale or transfer of the loan or changes in the servicer for the loan.

The Complaint alleges that the various Defendants alleged to have acquired and transferred the note, until it ultimately ended up with OneWest Bank, FSB failed to provide such written notices. Plaintiff-Debtor further asserts that the Defendants have violated RESPA by improperly computing the monthly post-petition

---

[3]    The Third Cause of Action asserts a "violation" of 11 U.S.C. § 362(k). Subparagraph (k) is a remedies provision for violation of the other provisions of § 362. The court reads the Second and Third Causes of Action as one claim for statutory damages under § 362(k), as opposed to a request for sanctions under 11 U.S.C. § 105 and the inherent powers of this court.

installments which have been demanded and collected from the Plaintiff-Debtor.   Additionally, that Defendants have failed to refund or credit back charges for improperly placed insurance, and have sent Plaintiff-Debtor incorrect post-petition RESPA escrow analyses.

As correctly stated by Defendants, while a private right of action exists for the failure to provide the servicing notice, the Plaintiff-Debtor must assert a damage claim caused by the failure to provide the notice.  12 U.S.C. § 2605(f), *Jensen v. Quality Loan Serv. Corp*, 702 F. Supp. 2d 1183, 1196-1197 (E.D. Cal. 2010), and *Wilson v. JP Morgan Chase Bank*, 2010 U.S. Dist. LEXIS 63212 (E.D. Cal. 2010). From a review of the Amended Complaint, the Plaintiff-Debtor does not assert any damages arising from the failure to provide the notices of change in servicer.

An additional RESPA claim has been asserted for the improper calculation of post-petition installments.   The Complaint is clear that the only alleged conduct in asserting an increase in post-petition installments has been by OneWest Bank, FSB. However, as asserted by Defendants, no private right of action is provided for a violation of the limitation on the requirements for advance deposits in escrow accounts pursuant to 12 U.S.C. §2604.   *See Hensley v. Bank of N.Y. Mellon*, 2010 U.S. Dist. LEXIS 135812 (ED Cal. 2010), and  *Brohpy v. Chase Manhattan Mortgage Co.*, 947 F. Supp. 879, 883 (E.D. Penn. 1996).

The Fourth Cause of Action is dismissed, without prejudice. No leave to amend is granted at this time.

### CONCLUSION

The court grants the Motion and dismisses the Complaint and

all causes of action as to  Mortgage Electronic Registration Systems, Inc., IMB HoldCo, LLC, IMB Management Holdings, LLC, OneWest Venture, LLC, FAC, and OneWest Bank Group, LLC without prejudice and without leave to amend.

The court grants the Motion and dismisses the Fourth and Fifth Cause of Action as to OneWest Bank, FSB, without prejudice and without leave to amend.

The court denies the Motion as to the First, Second, and Third Causes of Action as to OneWest Bank, FSB.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, and Fed. R. Bankr. P.  9014 and 7052.

The court shall issue an order consistent with this ruling.

Dated: June 30 , 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Peter Macaluso
910 Florin Rd #111
Sacramento, CA 95831

Kathy Dittimus
2608 Millcreek Dr
Sacramento, CA 95833

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

David Zaro
515 S Figueroa 7th Floor
Los Angeles, CA 90071-3398

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Terry Loftus
1770 4th Ave
San Diego, CA 92101

Thomas Aceituno
PO Box 189
Folsom, CA 95763

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814